UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

"IN ADMIRALTY"

CASE NO. 1:20-cv-25046-KMW

GREAT LAKES INSURANCE SE,

    Plaintiff,

vs.

CHARTERED YACHTS MIAMI LLC,

    Defendant.

_____/

**DEFENDANT CHARTERED YACHTS MIAMI LLC ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM**

Defendant CHARTERED YACHTS MIAMI LLC ("Chartered Yachts"), by and through its undersigned counsel, hereby files this Answer, Affirmative Defenses and Counterclaim, and states:

**Parties, Jurisdiction & Venue**

1. Admitted.

2. Admitted as to venue and that the policy was delivered to the Defendant. Remainder denied.

3. Admitted.

4. Admitted.

5. Admitted.

6. Denied as without knowledge or information sufficient to form a belief concerning the truth of the allegation.

**Factual Allegations**

7. Admitted.

8. Admitted.

9. Admitted.

10. Admitted.

11. Admitted as to the Defendant submitted a Renewal Questionnaire to the Plaintiffs only. Remainder denied.

12. Admitted as to the Renewal Questionnaire being a true and correct copy and that it was submitted to the Plaintiff only. Remainder denied.

13. Admitted.

14. Admitted.

15. Admitted.

16. Admitted.

17. Denied as without knowledge or information sufficient to form a belief concerning the truth of the allegation.

18. Admitted as to the date of the loss only. Remainder denied.

19. Admitted as to GLI was informed about the loss on November 11, 2020. Remainder denied.

20. Denied.

21. Denied.

22. Denied.

23. Denied.

24. Denied.

25. Denied.

26. Denied.

27. Admitted only that the Defendant has made a claim for damages under the policy. Remainder denied.

### First Cause of Action – Lack of Fortuity

28. Defendant re-alleges and reassert his responses to paragraphs 1 through 27 as if fully set forth herein.

29. Admitted.

30. Denied.

31. Admitted only that the Defendant has made a claim for damages under the policy. Remainder denied.

32. Denied.

33. Denied.

34. Denied.

### Second Cause of Action – Unseaworthiness

35. Defendant re-alleges and reassert his responses to paragraphs 1 through 27 as if fully set forth herein.

36. Admitted.

37. Denied.

38. Denied.

39. Denied.

40. Denied.

41. Admitted only that the Defendant has made a claim for damages under the policy. Remainder denied.

42. Denied.

43. Denied.

### Third Cause of Action – Exclusion for Wear & Tear, etc.

44. Defendant re-alleges and reassert his responses to paragraphs 1 through 27 as if fully set forth herein.

45. Admitted.

46. Denied.

47. Admitted only that the Defendant has made a claim for damages under the policy. Remainder denied.

48. Denied.

### Fourth Cause of Action – Exclusion for Damage to Engines, etc.

49. Defendant re-alleges and reassert his responses to paragraphs 1 through 27 as if fully set forth herein.

50. Admitted.

51. Denied.

52. Admitted only that the Defendant has made a claim for damages under the policy. Remainder denied.

53. Denied.

54. Denied.

### Fifth Cause of Action – Misrepresentation of Material Facts

55. Defendant re-alleges and reassert his responses to paragraphs 1 through 27 as if fully set forth herein.

56. Admitted.

57. Denied.

58. Denied.

59. Denied.

60. Denied.

61. Denied.

62. Admitted only that the Defendant has made a claim for damages under the policy. Remainder denied.

63. Denied.

64. Denied.

### Sixth Cause of Action – Breach of Warranty

65. Defendant re-alleges and reassert his responses to paragraphs 1 through 27 as if fully set forth herein.

66. Admitted.

67. Denied.

68. Denied.

69. Denied.

70. Admitted only that the Defendant has made a claim for damages under the policy. Remainder denied.

71. Denied.

72. Denied.

### Seventh Cause of Action – Defendant IPFS Corp. is a Simple Loss Payee

73. Defendant re-alleges and reassert his responses to paragraphs 1 through 27 as if fully set forth herein.

74. Admitted.

75. Denied.

76. Denied.

77. Denied.

78. Denied.

79. Denied.

   To the extent, a response is required, denied.

A) Denied.

B) Denied.

C) Denied.

D) Denied.

E) Denied.

F) Denied.

G) Denied.

H) Denied.

I) Denied.

J) Denied.

## AFFIRMATIVE DEFENSES

Chartered Yachts reiterates its responses to Plaintiff's allegations in paragraphs 1 through 27 above, and for its affirmative defenses alleges as follows:

### 1st Affirmative Defense – Waiver

Defendant avers that Plaintiff GREAT LAKES INSURANCE SE ("Great Lakes") waived its rights to disclaim coverage under the insurance policy at issue on grounds that certain express warranties were allegedly breached by the Defendant. Specifically, the following conduct by Great Lakes suffices to waive its right to deny coverage:

1. Great Lakes negligent and/or bad-faith conduct throughout the claims handling process operates to waive Great Lakes ability to contest coverage.

2. Failure to properly investigate claim and with due regard to insured's interest.

3. Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for Chartered Yachts' interests

4. Denying claims without conducting reasonable investigations based upon available information.

5. Failing to adopt and implement standards for the proper investigation of claims.

### 2nd Affirmative Defense – Estoppel

Defendant avers that Great Lakes is estopped from disclaiming coverage under the insurance policy at issue. Specifically, the following conduct by Great Lakes suffices to waive its right to deny coverage:

1. Great Lakes negligent and/or bad-faith conduct throughout the claims handling process operates to waive Great Lakes ability to contest coverage.

2. Failure to properly investigate claim and with due regard to insured's interest.

3. Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for Chartered Yachts' interests

4. Denying claims without conducting reasonable investigations based upon available information.

5. Failing to adopt and implement standards for the proper investigation of claims.

### 3rd Affirmative Defense – Lack of Causation

Defendant avers that Great Lakes failed to establish a causal relationship between any purported breach of warranty and the loss experienced by the insured Vessel. Failure to do so dooms Great Lake's claims for breach of express warranty.

### CHARTERED YACHTS MIAMI LLC'S COUNTERCLAIM

CHARTERED YACHTS MIAMI LLC ("Chartered Yachts" or "Counter-Plaintiff"), by and through undersigned counsel, hereby state the following allegations in support of its counterclaim against GREAT LAKES INSURANCE SE ("Great Lakes") for declaratory judgment pled against, both pursuant to Fed. R. Civ. P. 13. In support, Counter-Plaintiff states the following:

### JURISDICTION & VENUE

1. This is an action for breach of covenant of good faith and fair dealing and to declare the available coverage under a policy of insurance.

2. Chartered Yachts seeks to recover the amounts due for breach of covenant of good faith and fair dealing, including consequential and incidental damages, attorneys' fees and costs, and all other costs associated with the seeking recovery hereunder.

3. This is also an action for declaratory relief pursuant to 28 U.S.C. § 2201, in that a present controversy exists between the parties hereto in which Chartered Yachts asks this Court to adjudicate and determine the rights of the parties to a contract of marine insurance which is in dispute.

4. This is an admiralty and maritime cause within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, and this Court has subject-matter jurisdiction pursuant to 28 U.S.C. §1333.

5. This court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as this is a civil action concerning a policy of marine insurance in which the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of a State and citizens or subjects of a foreign state.

6. The Court has specific personal jurisdiction over the Defendant pursuant to Fed. R. Civ. P. 4(k) and Fla. Stat. § 48.193(1)(a) because Great Lakes had a general course of business in Florida and purposefully availed itself of conducting activity in Florida as it was:

    a. Investigating a marine insurance claim germane to a Vessel located within Florida.

    b. Wrongfully denying the claim at issue through agents located in Florida.

    c. Retaining professionals and directing them to Florida to investigate the Vessel involved in this litigation.

    d. Breaching a contract in Florida.

    e. Availing itself of U.S. District Courts in Florida.

7. Venue is proper in the U.S. District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) because Chartered Yachts maintained its a M/Y Petrus, a 1999 88'

Leopard ("Vessel") in Florida throughout the relevant time period and because Great Lakes is the original plaintiff in this matter and it opted for this venue.

## FACTS

6. On March 6, 2019, Chartered Yachts purchased the insurance policy from Great Lakes and that policy was issued on April 5, 2019.

7. On March 5, 2020, Chartered Yachts applied to renew the policy for the next year, between March 8, 2020 and March 8, 2021.

8. As a condition for the renewal, Chartered Yachts had to have the Vessel surveyed and to note any and all deficiencies.

9. On April 2, 2020, the Vessel was surveyed by Lou Gonzales of Global International Marine Surveyors ("Surveyor") who noted all of the deficiencies and informed both Chartered Yachts and the insurance of said deficiencies through the survey.

10. On April 15, 2020, Chartered Yachts certified through the two "Letter of Survey Recommendation Compliance" ("Compliance Letters") that work on all of the deficiencies had begun and was scheduled to be completed between April 14 and April 30, 2020.

11. Chartered Yachts hired Craig Koblitz of C.K. Marine to conduct the repairs on the Vessel to cure the deficiencies.

12. In fact, C.K. Marine was continuously working on board the Vessel conducting regular maintenance throughout the policy period.

13. All of the repairs were completed and the Vessel was brought up to compliance.

14. On April 24, 2020, Great Lakes renews the policy for the period between March 8, 2020 and March 8, 2021.

15. GREAT LAKES never complained of a lack of maintenance in the months leading up to the incident and it was only after the incident when GREAT LAKES was to pay under the policy did they file the claims of misrepresentation on the repairs and for lack of maintenance against Chartered Yachts in this Court.

16. On November 07, 2020, while the Policy was in full force and effect, Chartered Yachts suffered a loss under the policy when the Vessel began to take on water while on the Miami River.

17. The Vessel was salvaged by BISCAYNE TOWING & SALVAGE, INC d/b/a TowBoatUS Miami ("TowBoatUS Miami") and towed to RMK Merrill-Stevens ("Merill-Stevens").

18. TowBoat USA Miami charged $47,778.75 for the salvage operation which GREAT LAKES has failed to pay as required by the Policy.

19. It was later discovered that the Vessel's propeller had a dent and the bottom of the Vessel was severely gouged, which evidences that the Vessel had come into contact with something in an accidental physical loss.

20. On November 11, 2020, Chartered Yachts reported the loss to GREAT LAKES and exactly 30 days later, GREAT LAKES denied coverage in full and alleged that the Vessel sank because allegedly the Vessel's transom door was open while the Vessel was navigating the Miami River.

21. On December 18, 2020, the Vessel was towed to Middle Point Marina ("MPM") where Chartered Yachts entered into a contract to repair the Vessel for the loss incurred on November 7, 2020.

22. On December 20, 2020, the Vessel suffered a second sinking loss at MPM's facility because MPM left the Vessel in the water over the weekend with the knowledge that the Vessel had suffered a sinking incident in the prior month.

23. MPM salvaged and hauled out the Vessel on December 21, 2020 and charged a total of $85,669.89 for its services, including $2,500 for non-emergency towing, and $70,000 for salvaging the Vessel as it sunk at their marina.

24. GREAT LAKES has failed to pay for both salvage claims and towing costs as required by the Policy.

25. Chartered Yachts principal was onboard at the time of the sinking.

26. The transom door was not open prior to the sinking and it would not have been the cause of the loss.

27. GREAT LAKES also alleged that the Vessel was unseaworthy, not maintained properly and had a malfunctioning aft bilge pump.

28. However, the Vessel had in fact been well maintained and was fully seaworthy at the time of the loss.

29. Chartered Yachts had continuously hired Craig Koblitz, a marine mechanic from C.K. MARINE, INC. ("CK Marine") to conduct regular maintenance on the Vessel throughout the policy period, including up to the date of the loss.

30. GREAT LAKES's rushed 'investigation' led them to wrongfully deny coverage under the policy.

31. GREAT LAKES has failed to properly investigate the cause of the sinking, which most likely was caused by an accidental physical loss, which is fully covered under the Policy as there is evidence of propeller damage and severe gouging on the bottom of the Vessel

which evidences a strike with a fixed or floating object in the Miami River while the Vessel was in navigation as the cause of Vessel taking on water and sinking.

32. Nonetheless, GREAT LAKES has improperly investigated the claim, wrongfully denied coverage and failed to pay for the salvage and towing costs incurred in saving the Vessel while it sank.

33. On February 9, 2021, MPM sued the Vessel and the principal of Chartered Yachts, Greg Pack to collect on the unpaid salvage from the second sinking, as well as dockage, storage and haul out. *See NAVAL LOGISTIC, INC. d/b/a MlDDLE POINT MARINA v. M/V PETRUS, and GREG PACK*, Case No. 21-CV-20556-KMM (S.D. Fla. Feb. 9, 2021).

34. On March 31, 2021, the Vessel was arrested and the warrant was filed in the above case.

35. On April 7, 2021, BISCAYNE TOWING & SALVAGE, INC., also known as TowBoatsUS Miami filed their Intervening Verified Complaint against the Vessel and the principal, Greg Pack for their maritime lien for salvage totaling $47,778.75 in the above titled action.

36. The improper denial of coverage and breach of contract by GREAT LAKES has caused Chartered Yachts substantial damages as mentioned above.

## CAUSES OF ACTION

**COUNT I - Declaratory Judgment Pursuant to 28 U.S.C § 2201.**

37. Chartered Yachts incorporates by reference paragraphs 1-36 as if they were fully set forth herein.

38. A controversy exists between the parties as to their respective rights under a marine insurance contract.

39. Chartered Yachts contends that it is entitled to recover the full amount of coverage available pursuant to the express terms of the policy. A sum totaling $725,000.

40. Chartered Yachts contends that actual damages were incurred to salvage, tow and repair the Vessel, as evidenced by actual sums expended, invoices reflecting costs of goods and services, and estimates.

WHEREFORE counter-plaintiff CHARTERED YACHTS respectfully requests judgment against counter-defendant GREAT LAKES awarding all compensatory damages, statutory interest as permitted, pre-judgment interest as permitted, attorney's fees, and costs as permitted under the Federal Rules of Civil Procedure, along with any other relief this Court deems just and proper.

## COUNT II - BREACH OF CONTRACT

41. Chartered Yachts re-alleges and incorporate by reference paragraphs 1 through 36 as though set forth herein.

42. Chartered Yachts entered a written contract with GREAT LAKES and/or its agents to provide for insurance coverage for Chartered Yachts' Vessel.

43. The contract required, among other things that GREAT LAKES "will pay salvage charges incurred by" Chartered Yachts "in pursuance of 'your duties in the event of a loss' as set out in Section 10 of this insuring agreement, up to the limit of the sum insured under Section A of this insuring agreement less the deductible shown under Section A".

44. The contract also required that GREAT LAKES pay "Non-Emergency Towing" for which "the Scheduled Vessel is in no immediate danger but are incurred in good faith to prevent loss or damage to the Scheduled Vessel.

45. Furthermore, the contract required that GREAT LAKES pay for "reasonable expenses incurred by" Chartered Yachts "in attempting to minimize or mitigate a loss incurred and covered by this insuring agreement will be paid by us whether successful or not".

46. The Vessel has sunk twice and has incurred salvage, towing costs and other reasonable costs incurred to mitigate a loss as a result of that sinking.

47. GREAT LAKES has failed to pay for these sums as required by the contract and Chartered Yachts has been damaged.

WHEREFORE, CHARTERED YACHTS respectfully request that this Court enter judgment against GREAT LAKES for damages, interest, court costs, and all other relief recoverable under the applicable law or as this Court deems just and proper.

Dated: April 26, 2021                                   Respectfully submitted,

**MOORE & COMPANY, P.A.**
*Attorneys for Defendant/Counter-Plaintiff*
255 Aragon Avenue, 3rd Floor
Coral Gables, Florida 33134
Telephone:(786)221-0600
Facsimile: (786)221-0601
Email: michael@moore-and-co.com
Email: kvartak@moore-and-co.com


s/ Michael T. Moore
Michael T. Moore, Esq.
Florida Bar No. 207845
Kavan Vartak, Esq.
Florida Bar No. 1017058

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 26, 2021, I electronically filed the foregoing document with the Clerk of the court using CM/ECF. Copies of this pleading will be automatically served on all counsel of record through the Court's CM/ECF system.

<u>s/ Michael T. Moore</u>
Michael T. Moore, Esq.
Florida Bar No. 207845