UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-25046-CIV-WILLIAMS/MCALILEY

GREAT LAKES INSURANCE SE,

    Plaintiff,

vs.

CHARTERED YACHTS MIAMI LLC,

    Defendant.
_____/

## ORDER GRANTING MOTION TO QUASH SUBPOENA AND ENTER A PROTECTIVE ORDER

The Court must resolve a motion filed by a third-party, Naval Logistic, Inc., d/b/a Middle Point Marina (here, "MPM"), to quash a subpoena that Defendant served on MPM, that would allow Defendant to conduct an in-water inspection of a vessel, the M/V Petrus (here, the "Vessel"), that is at the center of this lawsuit. (ECF No. 24). MPM also asks the Court to issue a protective order, that protects MPM from having to place the Vessel in the water (and then return it to dry storage) for Defendant's desired inspection. (*Id.*). Some background is in order.

    **I.   Background**

The Vessel was damaged when it sank in the Miami River on November 7, 2020. At that time, it was insured by Great Lakes Insurance SE, the Plaintiff here. Plaintiff refused to pay a claim made by the Vessel's owner, Chartered Yachts Miami LLC, Defendant here. Plaintiff initiated this lawsuit with a Complaint that seeks a declaratory judgment that it

has no obligation under the terms of its policy to cover damage to the Vessel that followed its sinking. (ECF No. 1). Defendant responded with a Counterclaim for breach of contract; it also seeks a declaratory judgment that the policy of insurance covers the loss. (ECF No. 12).

The day after it sank, the Vessel was dewatered and placed in dry storage at a marina. (ECF No. 27 at 3). About two weeks later, on November 20, 2020, Plaintiff's surveyor went to the Vessel and had it placed back in the water, where it investigated the cause of the sinking. (*Id.*). The surveyor lifted the Vessel's bow to simulate the running angle of the Vessel at the time it took on water and sank and relied upon his observations during this test, to reach his findings. (ECF No. 27-1 at 10). Based on Plaintiff's investigation, it determined that the Vessel sank because of "wear and tear, gradual deterioration, lack of maintenance, etc."; not because of an "accidental external event". (ECF No. 1 at 4-5 ¶¶ 21-24).

A month later, on December 18, 2020, the Vessel was moved to MPM's shipyard. Within two days it sank again. (ECF No. 27 at 4). MPM removed the Vessel from the water and placed it in dry storage where it has remained. (*Id.*). At about that time, Plaintiff filed this action. *See* (ECF No. 1).

A few months later, in February 2021, MPM filed an action in this Court against the Vessel and its owner (Defendant here) for unpaid salvage, storage and towage services it provided the Vessel. *See Naval Logistics, Inc. v. M/V Petrus, et al.*; No. 21-CV-20556-MOORE, at ECF No. 1. On July 26, 2021, the Court ordered the sale of the Vessel to the

2

highest bidder. *Id.*, 2021 WL 3818586, at *8 (S.D. Fla. July 26, 2021). The Order also provided that "at the request of any interested person, [the Vessel custodian] shall grant permission to said person or his representative to visit, board, inspect, examine, and survey the M/V Petrus at its current location or any other place to which it may be moved prior to the sale during the daylight hours of any day up to twenty-four (24) hours before the scheduled sale date, and provided that the same shall be done at the sole expense and risk of said interested person or his representative." (*Id.*). At that point, Defendant was the Vessel owner and obviously it could have inspected the Vessel, in the water, at its own expense; and it could have done so earlier.

On August 19, 2021, Defendant's surveyor inspected the Vessel, on land. (ECF No. 27 at 5). Shortly thereafter, in September 2021, the Vessel was sold via auction to MPM, as the highest bidder. (ECF No. 24 at 3 ¶ 8).

On September 30, 2021, Plaintiff served Defendant with its expert report regarding the cause of the loss, which incorporated the finding of Plaintiff's surveyor, made at the November 20, 2020 in-water Vessel inspection. *See* (ECF Nos. 27 at 6; 27-1; 27-2).

On October 13, 2021 – two days before the deadline to disclose expert witness reports – Defendant filed a motion for extension of time to disclose those reports, to October 29, 2021. (ECF No. 22). On October 15, 2021, the Court granted the motion. (ECF No. 23).

On Tuesday, October 19, 2021, Defendant served a subpoena (dated the day before) on MPM that commands MPM to permit Defendant to inspect the Vessel in the water, on

3

the following Monday, October 25, 2021, (ECF Nos. 24 at 1 ¶ 1; 27-3), just days before the October 29th deadline for Defendant to disclose its expert report.

## II. MPM's Motion to Quash

Two days after receipt of Defendant's subpoena, MPM filed its motion to quash and for a protective order. (ECF No. 24). After a failed attempt to speak with the parties at a hearing the following day, I ordered an expedited weekend briefing schedule. (ECF Nos. 25; 26). The matter is now fully briefed. (ECF Nos. 27; 28).

Federal Rule of Civil Procedure 45(d)(3)(A) provides that a court "must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; ... or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). In this instance, the Court must quash the subpoena for both reasons.[1]

MPM has certainly shown that Defendant's desired water inspection would impose upon it an "undue burden." That is, Defendant makes the extraordinary demand that MPM use its equipment, property, and personnel to move the Vessel from dry storage to the water for Defendant's desired inspection, and then return the Vessel to dry storage.[2] The

---

[1] Rule 26(c) permits any person from whom discovery is sought, to move for a protective order to protect from, *inter alia*, undue burden or expense. Fed. R. Civ. P. 26(c)(1). The Court may issue such an order upon a finding of good cause. *Id.* For the same reasons why I find that the Court must quash the subpoena, I also find that good cause supports the entry of a protective order that bars Defendant from commanding MPM to host an in-water inspection of the Vessel.

[2] Defendant has already inspected the Vessel at MPM, on land, which may have burdened MPM to some extent, but the parties evidently agreed that that was not an undue burden. Evidently, MPM recently offered that Defendant may again inspect the Vessel on land. (ECF No. 24 at 5 ¶ 14).

4

Declaration of Robby Kessel, MPM's manager, clearly sets forth the considerable risks MPM would undertake if it were forced to facilitate this inspection. *See* (ECF No. 28-1).

Specifically, Mr. Kessel notes that the Vessel sank twice. It has not since been repaired and it may not be structurally sound. MPM fears that the Vessel may sink yet again and of course, as the owner of the Vessel, it would bear the loss caused by further damage to the Vessel. To move the Vessel to the water, MPM would have to use its Travel Lift crane, valued at about $500,000. The crane is rated to move 120 tons, which is sufficient for the Vessel, which weighs 80 tons without fuel or water. If the Vessel were to sink yet again, and take on considerable water, it may then exceed the capacity of the crane to move the Vessel back to dry storage, risking damage to this valuable equipment and possible interruption of MPM's operations. MPM's employees would have to move the Vessel – after business hours and with overtime compensation – and if the Vessel were to sink, they would have to engage in dewatering and refloating the Vessel, using MPM's equipment. This scenario risks the release of pollutants into the water, injury to participants, business interruption, property damage and liability on the part of MPM. (*Id.*).

Defendant has offered no guarantee or indemnity that might cover MPM's losses were it to incur damages, and MPM rightly points out that there is "no indication that [Defendant] has adequate resources to provide security in the event of loss or liability." (ECF No. 28 at 5 n.1). Plainly, Defendant's desired inspection subjects MPM to undue burden, and this alone, is reason to quash the subpoena.

The subpoena is also untimely, and this too supports this Order. Defendant has failed

5

to justify the very brief notice that its subpoena gave MPM. Notably, Rule 45 does not state what period of notice provides a "reasonable time" for a third party to comply with a subpoena. "[O]ther courts have looked to the language [of Rule 45(d)(2)(B)] to find fourteen days from the date of service is presumptively reasonable." *TIC Park Centre 9, LLC v. Cabot*, No. 16-24569-Civ, 2017 WL 9988745, at *7 (S.D. Fla. June 9, 2017) (citations omitted); *see also Hamilton v. Coffee Health Grp.*, No. CV-10-S-3621-NE, 2011 WL 13286731, at *3 (N.D. Ala. Nov. 16, 2011) (listing cases where courts have found notice under fourteen days unreasonable). In the end, however, the Court must evaluate the reasonableness of the notice in the context of the surrounding circumstances. *Palmisano v. Paragon 28, Inc.*, No. 21-60447-CIV, 2021 WL 1686948, at *2 (S.D. Fla. Apr. 7, 2021) (citation omitted).

Given the extraordinary measures the proposed inspection places on MPM, four business days' (or six calendar days') notice is plainly inadequate. Defendant argues that looks are deceiving, stating that in "early October 2021", it began to speak with MPM about an in-water inspection of the Vessel, which MPM refused. (ECF No. 27 at 6). MPM denies that weeks of negotiations about the in-water inspection took place. (ECF No. 28 at 6). Regardless, whether MPM had a couple weeks' notice, or not, without arrangements to protect MPM against its possible losses, it is unreasonable for the inspection to go forward.

The Court recognizes that Defendant has persuasively argued the importance, to Defendant, of the in-water inspection, explaining that it is "impossible" for it to "determine the exact cause of the loss and the source of the water intrusion while the Vessel [is] in dry

6

storage" and that it must "recreate the incident" when the Vessel first sank, to identify the cause. (ECF No. 27 at 5).[3] Further, the Court understands that Defendant did not receive Plaintiff's expert report until September 30, 2021. Defendant, however, does not justify its failure to conduct an in-water inspection of its own long ago. It certainly could have easily done so in November 2020, when it owned the Vessel and it was in the water to allow Plaintiff's inspection. Perhaps Defendant counted on Plaintiff paying on its claim, and thus hoped it could avoid the cost of its own inspection. Whatever Defendant's thinking was at the time, it made a choice to not inspect the Vessel when it fully bore the risk of inspection. It is unreasonable, under these circumstances, for Defendant to shift that burden now to MPM.

### III. Payment of reasonable expenses

Rule 37(a)(5)(A) provides that "[i]f the motion [for a protective order] is granted– the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A); *see also* Fed. R. Civ. P. 26(c)(3). For the reasons stated above, I find that Defendant's subpoena was not substantially justified and that other circumstances do not make an award of MPM's expenses unjust.

---

[3] Of course, "recreating" the event when the Vessel took on water underscores the possibility that Defendant's in-water test will cause the Vessel to sink again, when MPM – not Defendant – is the owner.

**IV.     Conclusion**

The Court therefore **GRANTS** MPM's Motion to Quash and for Protective Order, (ECF No. 24), and quashes Defendant's October 18, 2021 subpoena to MPM to inspect the M/Y Petrus in the water, and **ORDERS** that MPM shall not be required to place the M/Y Petrus in the water for Defendant's inspection of that Vessel.

The Court further **ORDERS** that Defendant shall pay MPM's reasonable attorneys' fees and costs incurred in filing its Motion and Reply memoranda. (ECF Nos. 24; 28).

DONE and ORDERED in Miami, Florida this 25th day of October 2021.

                                                                                CHRIS McALILEY
                                                                                UNITED STATES MAGISTRATE JUDGE

cc:    The Honorable Kathleen M. Williams
        Counsel of record